UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| BROTHERHOOD MUTUAL INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CAUSE NO.: 1:10-CV-462 |
| GUIDEONE MUTUAL INSURANCE COMPANY, | ) ) ) | |
| Defendant. | ) ) | |

## OPINION AND ORDER

Before the Court is Defendant GuideOne Mutual Insurance Company's motion to transfer venue (Docket # 14) requesting pursuant to 28 U.S.C. § 1404(a) that the Court transfer this declaratory judgment action to the United States District Court for the Northern District of California, because, it asserts, it is clearly a more convenient forum that better serves the interests of justice.[1] Plaintiff Brotherhood Mutual Insurance Company, opposes the motion, contending that this Court, not the California court, is the more convenient venue. For the following reasons, GuideOne's motion to transfer will be GRANTED.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

On December 22, 2010, Brotherhood, an Indiana corporation with its principal office located in Fort Wayne, Indiana, filed this declaratory judgment action here against GuideOne, an Iowa corporation with its principal office located in West Des Moines, Iowa. (Docket # 1.)

---

[1] Diversity jurisdiction arises under 28 U.S.C. § 1332(a). (Docket # 1.) All parties have consented to the Magistrate Judge. *See* 28 U.S.C. § 636(c). (Docket # 16.)

Brotherhood seeks contribution from GuideOne for the sums it paid on behalf of its insured, Western Seminary, an educational institution in California, for the defense and settlement of two lawsuits in a series of three separate suits filed against Western Seminary. (Docket # 1; Def.'s Mot. to Transfer Venue ¶ 6.)

As background, Brotherhood and GuideOne each issued a commercial general liability insurance policy to Western Seminary, and the policies overlapped for a short time period. (Compl. ¶¶ 8, 10.)  GuideOne's insurance policy with Western Seminary was in effect from November 15, 2001, through January 23, 2006, while Brotherhood's insurance policy was in effect from November 15, 2005, through November 15, 2007. (Compl. ¶¶ 8, 10.)

The first underlying suit was filed against Western Seminary in 2003 in the Superior Court of California, Santa Clara County, by a student at its campus in San Jose, California. (Compl. ¶¶ 11-12.)  GuideOne and Tudor Insurance, who had issued an educational errors and omission policy to Western Seminary, defended Western Seminary in the suit. (Compl. ¶¶ 9, 15.) The parties settled the action on March 14, 2006. (Compl. ¶ 17.)

On March 26, 2007, the student filed a second suit against Western Seminary in the Superior Court of California, Santa Clara County, alleging various actions or omissions by Western Seminary during settlement of the first lawsuit and thereafter. (Compl. ¶¶ 22, 26.) Brotherhood agreed to defend Western Seminary in the suit under a reservation of rights. (Compl. ¶ 25.)  When Brotherhood learned that the basis for the suit was ostensibly the 2006 settlement agreement, it asked GuideOne to take over the defense in the matter. (Compl. ¶ 26.) GuideOne, however, denied coverage and refused to contribute to Western Seminary's defense. (Compl. ¶¶ 27, 34, 37.)  The suit was ultimately resolved in Western Seminary's favor through

arbitration. (Compl. ¶ 35.)

On June 29, 2007, the student's mother filed suit against Western Seminary in the Superior Court of California, Santa Clara County, citing various constitutional claims and seeking rescission of the 2006 settlement, to which she was a signatory. (Compl. ¶ 38.) GuideOne initially denied coverage and refused to tender a defense. (Compl. ¶ 39.)  After the completion of some discovery, however, GuideOne took over the defense of the suit and agreed to defend Western Seminary under a reservation of rights. (Compl. ¶¶ 41, 42.)  On March 12, 2010, the parties settled the action. (Compl. ¶ 45.)

Brotherhood purports that it incurred $624,893.32 in defending the two 2007 suits against Western Seminary, while GuideOne incurred just $45,000. (Compl. ¶¶ 37, 44, 46.)  Accordingly, Brotherhood's claim against GuideOne in the instant suit centers on whether the second and third lawsuits triggered coverage under GuideOne's insurance policy with Western Seminary and whether GuideOne contributed its equitable share to the costs of the defense and indemnity. (Compl. ¶¶ 47-62.)

On April 8, 2011, GuideOne filed the instant motion to change venue, asserting that the Northern District of California is clearly a more convenient forum that better serves the interests of justice. (Docket # 14.)  Brotherhood opposes the request for transfer, and the motion is now fully briefed. (Docket # 15, 17, 18.)

## II.  APPLICABLE LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).  In determining whether to transfer an action, a court conducts essentially

the same analysis as if it were considering dismissal under the doctrine of *forum non conveniens*. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 264-65 (1981). Yet, "§ 1404(a) transfers are different than dismissal on the ground of *forum non conveniens*[,]" because "[d]istrict courts were given more discretion to transfer under § 1404(a) than they had to dismiss on grounds of *forum non conveniens*." *Id.*

Specifically, a party seeking transfer of a civil action must show that (1) venue is proper in both the transferor and transferee court; (2) transfer is for the convenience of the parties and witnesses; and (3) transfer is in the interest of justice. *Boyd v. Snyder*, 44 F. Supp. 2d 966, 968 (N.D. Ill. 1999) (citing *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 (7th Cir. 1986)); *see Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010). The party moving for the transfer carries the "burden of establishing, by reference to particular circumstances, that the transferee forum is clearly more convenient." *Coffey,* 796 F.2d at 220*; see also K & F Mfg. Co. v. W. Litho Plate & Supply Co.*, 831 F. Supp. 661, 664 (N.D. Ind. 1993) ("Where transfer merely would shift convenience (and conversely, inconvenience) from one party to another, transfer should not be granted."). In that vein, the Seventh Circuit Court of Appeals has made clear that a plaintiff's choice of forum is entitled to considerable deference. *See, e.g.*, *In re Nat'l Presto Indus.*, 347 F.3d 662, 663-64 (7th Cir. 2003).

"Although in considering a motion for transfer, the trial judge is limited to the three factors specifically mentioned in § 1404(a), *viz.*, the convenience of the parties, the convenience of the witnesses, and the interest of justice, these factors are best viewed as placeholders for a broader set of considerations, the contours of which turn upon the particular facts of each case." *Coffey*, 796 F.2d at 219 n.3 (citations omitted). Accordingly, the first two factors are further

divided into several "private interests": "(1) the plaintiff's choice of forum; (2) the situs of the material events; (3) the relative ease and access to the sources of proof; (4) the convenience of the parties; and (5) the convenience of the witnesses." *Depuy Orthopaedics, Inc. v. Gault S. Bay, Inc.*, No. 3:07-cv-425RM, 2007 WL 3407662, at *8 (N.D. Ind. Nov. 13, 2007) (citing *First Nat'l Bank v. El Camino Res., Ltd.*, 447 F. Supp. 2d 902, 911-12 (N.D. Ill. 2006)); *see Research Automation*, 626 F.3d at 978.

In addition, courts must also consider the "public interest," that is, the interests of justice. *Id.* at 10; *see Research Automation*, 626 F.3d at 978. "This analysis focuses on the efficient administration of the court system, rather than the private considerations of the litigants." *Depuy Orthopaedics*, 2007 WL 3407662, at *8 (quoting *Amoco Oil Co. v. Mobil Oil Corp.*, 90 F. Supp. 2d 958, 961 (N.D. Ill. 2000)). "Public interest factors include the court's familiarity with the applicable law, the speed at which the case will proceed to trial, and the desirability of resolving controversies in their locale." *Id.* (quoting *First Nat'l Bank*, 447 F. Supp. 2d at 912) (internal quotations marks omitted); *see Research Automation*, 626 F.3d at 978.

### III. DISCUSSION

The Court will now analyze the particular circumstances in this action with respect to the relevant factors to determine whether a change of venue is warranted. Since the parties do not argue that venue is improper in either the transferor or transferee court,[2] we begin by examining the "private interests," that is, whether the transfer is for the convenience of the parties and witnesses.

---

[2] While GuideOne does not concede that venue is proper in this Court, it does not develop an argument that the Indiana forum is improper. Of course, undeveloped arguments are deemed waived. *See, e.g.*, *United States v. Hook*, 471 F.3d 766, 775 (7th Cir. 2006). Therefore, the Court need not further address this preliminary issue.

*A. The "Private Interests"*

1. <u>The Plaintiff's Choice of Forum</u>

The first factor described under the "private interests" is the plaintiff's choice of forum. Here, Brotherhood chose to bring suit in Fort Wayne, Indiana, where its principal place of business is located.

"A plaintiff's choice of forum is generally given substantial weight, particularly when it is the plaintiff's home forum." *Moore v. Motor Coach Indus., Inc.*, 487 F. Supp. 2d 1003, 1006-07 (N.D. Ill. 2007). "A plaintiff's choice of forum is afforded less deference, however, when another forum has a stronger relationship to the dispute or when the forum of plaintiff's choice has no significant connection to the situs of material events." *Id*. (citing *Chicago, Rock Island & Pac. R.R. Co. v. Igoe*, 220 F.2d 299, 304 (7th Cir. 1955)); *see also Depuy Orthopaedics*, 2007 WL 3407662, at *8-9; *Von Holdt v. Husky Injection Molding Sys.*, 887 F. Supp. 185, 188 (N.D. Ill. 1995). If that is the case, "[p]laintiff's choice . . . becomes simply one factor among many to be considered." *Hyatt Corp. v. Pers. Comm. Indus. Ass'n*, No. 04 C 4656, 2004 WL 2931288, at *2 (N.D. Ill. Dec. 15, 2004) (internal quotation marks and citation omitted).

Therefore, the substantial weight that would be applied to Brotherhood's choice of its home forum in this instance may be diminished by the dispute's connection with California, if significant. As a result, we will proceed to the second factor, the situs of material events, before definitively weighing Brotherhood's choice of its home forum.

2. <u>The Situs of Material Events</u>

Here, Brotherhood does not dispute the fact that the material events giving rise to the underlying lawsuits took place in California. *Id.* at *3 (considering in a breach of contract case

where the agreement was primarily negotiated and signed in determining the situs of material events). It emphasizes, however, that insurance coverage contract disputes are often located in fora different from those in which the underlying claims arise. *See St. Paul Fire & Marine Ins. Co. v. Bhd. Int'l Corp.*, No. 05-C-5484, 2006 WL 1543275, at *3 (N.D. Ill. June 1, 2006) (collecting cases). This is because the event underlying the declaratory judgment action is the insurer's decision to deny coverage, rather than the events comprising the merits of the underlying action. *Kelley Buick of Atlanta, Inc. v. TIG Ins. Co.*, No. 1:05-cv-271, 2005 WL 3238325, at *2 (N.D. Ind. Nov. 29, 2005).

In that vein, Brotherhood contends that Indiana's connection to the lawsuit is based on more than the fact that it is an Indiana corporation with its principal office in Fort Wayne. It emphasizes that it issued checks in payment of the defense of the underlying disputes from its Indiana offices, and that one of its adjustors in Fort Wayne directed correspondence and demands for coverage to GuideOne.

Nonetheless, the damages for which Brotherhood seeks contribution in this action were incurred in California lawsuits arising from insurance contracts that were entered into in California. Although GuideOne apparently uses an Iowa mailing address for all of its employees, Scott Abels, the GuideOne representative who made and issued the coverage decisions, is physically located in GuideOne's Rocklin, California, claims office. At the end of the day, the fact that Brotherhood issued checks and directed correspondence and demands for coverage from its Indiana offices, does not outweigh the undisputed evidence that Brotherhood seeks contribution for sums it paid under its California insurance contract, on behalf of its California insured party, to its chosen California counsel. Therefore, the second factor, the situs

of material events, weighs more in favor of California than Indiana.

On that score, the dispute's significant connection with California serves to diminish the substantial weight that would otherwise be applied in Brotherhood's favor to the first factor—its choice of an Indiana forum. As a result, the Court will consider Brotherhood's choice of forum as "simply one factor among many to be considered." *Hyatt Corp.*, 2004 WL 2931288 at *2.

### 3. The Relative Ease and Access to the Sources of Proof

The next factor for consideration is the relative ease and access to the sources of proof. The documentation concerning the claims-handling is located in both GuideOne's California office and Brotherhood's Indiana office. The underlying lawsuits, however, were litigated in the California courts, and therefore this factor just slightly favors a California forum.

### 4. The Convenience of the Parties and the Witnesses

The remaining two factors under the "private interests" are the convenience of the parties and the witnesses. As to the convenience of the parties, the California venue is no more convenient than Indiana. GuideOne is an Iowa corporation, and thus it will be forced to travel to a foreign venue whether it is California or Indiana. Of course, since Brotherhood is an Indiana corporation, the California venue would be decidedly less convenient for it.

The convenience of the witnesses, however, is "the most important factor in the transfer balance." *Abbott v. Lockheed Martin Corp.*, No. 06-cv-0701-MJR, 2007 WL 844903, at *3 (S.D. Ill. Mar. 20, 2007); *Kingsley v. Dixon Old People's Home Fund, Inc.*, No. 96 C 2464, 1996 WL 417548, at *2 (N.D. Ill. July 22, 1996). "Convenience considerations include, *inter alia*, the number of witnesses involved, travel distances and associated costs for these witnesses, the willingness of the witnesses to appear, or whether the witness is within the court's reach to

compel appearance." *Hunter v. Big Rock Transp., Inc.*, No. 1:07-cv-1062-SEB-TAB, 2008 WL 1957775, at *2 (S.D. Ind. May 2, 2008).

Brotherhood suggests that the convenience of the witnesses is irrelevant in this matter, asserting that the case will depend simply on the interpretation of the insurance policies at issue and their application to the claims made in the underlying litigation, without additional witness testimony. GuideOne disagrees. It plans to call Mr. Abels, its claims specialist in California who made the coverage decisions, as one of its primary witnesses. It also anticipates calling an expert witness located in California with respect to the attorney fee issue to testify to a "California reasonableness standard." (Reply. 3.) In addition, it expects to depose Samuel Phillips, Brotherhood's California counsel who corresponded with GuideOne about the coverage issue and presumably incurred in excess of $600,000 in fees. Therefore, the convenience of the witnesses certainly supports a transfer to the California venue.

In sum, with respect to the "private interests", the two factors favoring the California venue—the situs of material events and, most importantly, the convenience of the witnesses—outweigh the two factors favoring Indiana, that is, Brotherhood's choice of forum and the convenience of the parties.

### B. The "Public Interest"

We next turn to the "public interest" prong in the analysis of GuideOne's motion to transfer. As explained earlier, the analysis of the "public interest" focuses on the efficient administration of the court system, rather than the private considerations of the litigants. *Depuy Orthopaedics*, 2007 WL 3407662, at *8.

The parties agree that statistics indicate that the difference between the speed at which

the Northern District of California and the Northern District of Indiana disposes of cases is negligible. (*See* Def.'s Mem. In Supp. 6.)  Brotherhood argues, however, that a transfer of venue will, in itself, delay the litigation.  Brotherhood's argument is not particularly persuasive; this case is in the early stages, and the parties have not yet begun discovery.  Therefore, any delay arising from a transfer would be minimal.

More significantly, the parties agree that California law is likely applicable to the instant litigation because it concerns the interpretation of insurance policies issued to its California insured and the insured risks were located in California.  Also, the parties do not dispute that one of the key issues in this action is the reasonableness of the $624,893.32 in attorney's fees incurred by Brotherhood for which it seeks contribution from GuideOne.  This issue will be decided under a California standard and will likely involve the testimony of experts in California who are familiar with the reasonableness and standards of practice for California attorneys.

Even if these issues of California law are not necessarily complex, we believe that the Northern District of California will be more readily familiar with the applicable law. *See Karrels v. Adolph Coors Co.*, 699 F. Supp. 172, 177 (N.D. Ill. 1988); *but see Zucker v. Am. Greetings Corp.*, No. 94 C 1844, 1995 WL 398933, at *4 (N.D. Ill. June 30, 1995) (concluding that the interests of justice did not require transfer where the law was relatively clear and straightforward); *see generally Anchor Wall Sys., Inc. v. R & D Concrete Prods., Inc.*, 55 F. Supp. 2d 871, 873 (N.D. Ill. 1999) ("District courts have broad discretion in denying or granting a motion to transfer under Section 1404(a).").  In fact, the Seventh Circuit Court of Appeals has recognized that in diversity cases, it is "advantageous to have federal judges try a case who are familiar with the applicable state law." *Coffee*, 796 F.2d at 221 (citing *Van Dusen v. Barrack*,

376 U.S. 612, 622 (1964)).

Furthermore, as concluded *supra*, most of the material events giving rise to this litigation occurred in California. *See DePuy Orthopaedics*, 2007 WL 3407662, at *11. "Resolving litigated controversies in their locale is a desirable goal of the federal courts." *Doage v. Bd. of Regents*, 950 F. Supp. 258, 262 (N.D. Ill. 1997).

In the end, after considering all of the relevant factors, the Court is convinced that the balance of the party and witness convenience and the paramount interests of justice in this instance clearly weigh in favor of the transfer of this action to the Northern District of California. Accordingly, GuideOne's motion to transfer venue will be granted.

## IV.  CONCLUSION

For the foregoing reasons, Defendant GuideOne Mutual Insurance Company's motion to transfer venue (Docket # 14) to the United States District Court for the Northern District of California is GRANTED.

SO ORDERED.

Enter for April 28, 2011.

S/Roger B. Cosbey
Roger B. Cosbey,
United States Magistrate Judge
